UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN K WHITE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, et al.,<br><br>    Defendants. | Case No. 22-cv-06143-JSC<br><br>**ORDER RE: MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 112 |

Plaintiff sued Defendants alleging their flood control operations, which release water from the Coyote Valley Dam into the Russian River, injure protected species of salmonids in violation of the Endangered Species Act of 1973 ("ESA"). (Dkt. No. 1.)[1] The Court granted Plaintiff's motion for summary judgment on the merits. (Dkt. No. 81.) Now pending before the Court is Plaintiff's motion for an award of reasonable attorney and expert witness fees and costs. (Dkt. No. 112.) Having carefully considered the parties' submissions, the Court GRANTS in part and DENIES in part Plaintiff's motion and AWARDS Plaintiff $279,990.00 in attorney's fees, $71,125.00 in expert witness fees, and $10,527.89 in costs for a total of $361,642.89.

**BACKGROUND**

In October 2022, Plaintiff sued Defendants alleging (1) the United States Army Corps of Engineers' flood control releases at the Coyote Valley Dam caused unlawful take of listed salmonids, in violation of ESA Section 9, 16 U.S.C. § 1538(a)(1)(B); and (2) the Army Corps and the National Marine Fisheries Service failed to reinitiate consultation in violation of ESA Section 7, 16 U.S.C. § 1536(a)(2). (Dkt. No. 1 ¶¶ 78-88.) Because Defendants were in the process of

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    reinitiating consultation under the ESA, they moved to dismiss, but the Court denied their motion.
2    (Dkt. Nos. 15, 26.)  Plaintiff also moved for a preliminary injunction, and the Court denied his
3    motion.  (Dkt. Nos. 50, 57.)  Both parties then moved for summary judgment.  (Dkt. Nos. 72, 76.)
4    The Court denied Defendants' motion and granted Plaintiff's motion on the merits, but held
5    Plaintiff's request for injunctive relief in abeyance until August 2024 because Defendants were
6    working to complete the reinitiated consultation.  (Dkt. No. 81.)  The parties later reached a
7    settlement and agreed to negotiate Plaintiff's claims for fees and costs.  (Dkt. No. 89.)  Pursuant to
8    the parties' stipulation, the Court set a briefing schedule for Plaintiff's motion for fees and costs.
9    (Dkt. No. 111.)  Plaintiff now moves for attorney and expert witness fees and costs.  (Dkt. No.
10   112.)

**DISCUSSION**

The ESA's citizen-suit provision authorizes individuals to sue to enjoin any person alleged to be in violation of any ESA provision or its implementing regulation.  *See* 16 U.S.C. § 1540(g)(1).  "[T]o encourage enforcement by so-called 'private attorneys general,'" the ESA's citizen-suit provision "provi[des] for recovery of the costs of litigation (including even expert witness fees)."  *Bennett v. Spear*, 520 U.S. 154, 165 (1997).  Specifically, a court "issuing any final order in any suit brought" under Section 1540(g)(1) "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  16 U.S.C. § 1540(g)(4).

The parties agree Plaintiff has prevailed on his ESA claims and can therefore recover fees and costs.  *See Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999) (noting only a prevailing party may recover).  Plaintiff seeks $349,987.50 in attorney's fees for Philip Williams, $5,841.81 in costs for Mr. Williams, $100,800.00 in expert witness fees for Plaintiff, $5,223.73 in costs for Plaintiff, and $71,125.00 in expert witness fees for Robert Klamt.  (Dkt. No. 114 at 6.)

**I.     ATTORNEY'S FEES AND COSTS**

    **A.     Attorney's Fees**

The "lodestar method" is the appropriate method for evaluating requests for attorney's fees and is "calculated by multiplying the number of hours the prevailing party reasonably expended on

2

the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted). Although the court may adjust the loadstar to "reflect[] a host of reasonableness factors," "the lodestar figure is presumptively reasonable." *Id.* at 941-42 (quotation marks and citation omitted).

### 1. Reasonable Hourly Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (citation omitted). "It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (citation omitted); *see also Ctr. for Biological Diversity v. EPA*, No. C 17-00720 WHA, 2017 WL 6761932, at *3 (N.D. Cal. Dec. 4, 2017) ("[I]f the party fails to meet this standard, the fee request may be reduced or excluded altogether."). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted).

"[T]he general rule is that the rates of attorneys practicing in the forum district," here, the Northern District of California, apply. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). However, the court may adjust rates based on the location of the action and its lawyers within the Northern District of California. *See Cal. Sportfishing Protection All. v. Denbeste Yard & Garden, Inc.*, No. 22-cv-01975-RFL, 2023 WL 10367397, at *1 (N.D. Cal. Dec. 8, 2023) ("[T]he relevant community is the Northern District of California, specifically the Sonoma County area, where the action and the work[] performed by counsel took place."); *Californians for Alternatives to Toxics v. Kernen Constr. Co.*, No. 20-cv-01348-YGR, 2022 WL 22227777, at *3 (N.D. Cal. Mar. 21, 2022) (reducing rates because "requested rates exceed prevailing market rates in the far northern parts of this District for cases entirely local to that area"); *see also Nat'l Fam. Farm Coal. v. EPA*,

3

29 F.4th 509, 513 (9th Cir. 2022) ("[T]he presumptive rate is the market rate in the location where counsel have their office and do the bulk of their work.").

Plaintiff proposes a $675 hourly rate for Mr. Williams. Mr. Williams has been practicing law, "particularly in the fields of endangered species, water, the environment, and public agency," since his admission to the California State Bar in 2014. (Dkt. No. 112-2 ¶ 2.) After law school, he worked as Deputy General Counsel and then General Counsel for Wetlands Water District. (*Id.* ¶ 3.) From April 2018 to May 2019, he worked as an associate at Briscoe Ivester & Bazel, LLP ("Briscoe"), a law firm in San Francisco, and from June 2019 to May 2023, he worked as Of Counsel at Welty Weaver & Currie, PC in Healdsburg, California. (*Id.* ¶¶ 4-6.) Beginning in June 2023, Mr. Williams ran The Law Offices of Philip A. Williams in Ukiah, CA. (*Id.* ¶ 6). In support of Mr. Williams' requested rate, Plaintiff cites Mr. Williams' $550 hourly rate while an associate at Briscoe in San Francisco, and Briscoe managing partner Peter Prows' attestation he charges $750 hourly for environmental litigation and is "aware of partners at bigger San Francisco firms who charge more than double . . . for federal Endangered Species Act litigation here." (*Id.* ¶ 4; Dkt. No. 112-10 at 2.)

Plaintiff's evidence is insufficient to establish reasonable hourly rates for a lawyer with Mr. Williams' experience in Mendocino County. As to Mr. Williams' experience, Mr. Prows attests to his own $750 hourly rate, but Mr. Prows graduated law school in 2006, joined Briscoe in 2008, and now works as Briscoe's managing partner. (Dkt. No. 112-10 at 1-2.) Mr. Williams, in contrast, did not join the California State Bar until 2014. Mr. Prows' "aware[ness] of partners at bigger San Francisco firms who charge more than double . . . for federal Endangered Species Act litigation here" also does not provide a specific point of comparison for Mr. Williams' rates. (*Id.* at 2.) Furthermore, although Mr. Williams' agreements with Plaintiff ranged between $350 and $700 hourly rates, "[d]etermination of a reasonable hourly rate is not made by reference to rates actually charged [by] the prevailing party." (Dkt. No. 112-2 ¶¶ 7-9.) *See Chalmers*, 796 F.2d at 1210 (citation omitted).

Mr. Prows' letter and Mr. Williams' $550 hourly rate while an associate at Briscoe in San Francisco also do not establish reasonable hourly rates in Mendocino County. Mr. Williams' law

4

office is in Mendocino County; Plaintiff lives in and works for the City of Ukiah in Mendocino County; and the case relates to Defendants' flood control operations at the Coyote Valley Dam in Mendocino County. (Dkt. No. 1 ¶ 9; Dkt. No. 112-2 ¶ 6; Dkt. No. 112-12 ¶¶ 7, 16.) Although court hearings took place at the San Francisco courthouse, settlement meetings were in Healdsburg. (Dkt. No. 112-12 ¶ 16.) Therefore, while the Northern District of California remains the relevant community, rates in Mendocino County are more relevant than rates in San Francisco. *See Cal. Sportfishing Protection All.*, 2023 WL 10367397, at *1 (adjusting rates because "action and the work[] performed by counsel" were in Sonoma County); *Californians for Alternatives to Toxics*, 2022 WL 22227777, at *2 (adjusting rates because "the action and its lawyers are based entirely in the Humboldt and Sonoma counties").

Plaintiff's reliance on *Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308 (N.D. Cal. 1995), is unavailing. In that case, the attorneys had "national practices," so the court refused to consider disparate rates for attorneys' home communities beyond the Northern District of California and instead applied San Francisco rates based on "several discovery hearings, the preliminary injunction hearing and the two-week trial" in San Francisco. *Id.* at 317. Here, the Northern District of California remains the relevant community, and the Court merely adjusts for local variations at Mr. Williams' home community within the Northern District. *See also Leuzinger v. County of Lake*, No. C 06-00398 SBA, 2009 WL 839056, at *8-9 (N.D. Cal. Mar. 30, 2009) (recognizing Northern District of California is "local community" but refusing to apply San Francisco rates because "Lake, Mendocino, and Alameda Counties lie in this district").

Because Plaintiff does not present evidence of Mendocino County rates, the Court looks to rate determinations in similar cases. *See United Steelworkers of Am.*, 896 F.2d at 407. In two recent cases, courts have considered a 20% rate reduction appropriate to account for differences in environmental litigation rates between San Francisco and other counties in the Northern District of California. *See Californians for Alternatives to Toxics*, 2022 WL 22227777, at *2-3 (reducing rates by 20% for action local to Humboldt and Sonoma Counties); *Cal. Sportfishing Protection All.*, 2023 WL 10367397, at *1 (adopting identical rates for litigation in Sonoma County). Defendants ask the Court to similarly discount Plaintiff's requested rate by 20%, from $675 to

$540.

The Court agrees a $540 hourly rate is reasonable. Considering Mr. Williams' 11 years of practice, a $540 hourly rate falls within ranges courts have considered reasonable for similarly specialized litigation. *See Californians for Alternatives to Toxics*, 2022 WL 22227777, at *3 (adopting $600 hourly rate for attorney with 22 years of practice and $320 rate appropriate for attorney with 6 years of practice in environmental litigation); *Brown v. HTR Properties LLC*, No. 3:17-cv-00829-WHO, 2019 WL 13251605, at *3 (N.D. Cal. Sept. 30, 2019) (adopting $625 rate for attorney with 42 years of experience and $300 rate for attorney with 6 years of experience for disability rights case in Ukiah); *see also Leuzinger*, 2009 WL 839056, at *8-9 (affirming $400 hourly rate for Mendocino County attorney); *Env't Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 229 F. Supp. 2d 993, 995, 1007 (N.D. Cal. 2002) (adopting rates between $145 and $350 for ESA litigation in Humboldt County). A $540 hourly rate is also reasonable in light of Plaintiff's success, risk of loss, and the case's complexity. *See Chalmers*, 796 F.2d at 1211 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

So, the Court grants Mr. Williams attorney's fees at a $540 hourly rate.

### 2. Reasonable Number of Hours

The party requesting fees bears "the burden of submitting billing records to establish that the number of hours" requested are reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The party opposing fees also "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98 (citation omitted). Ultimately, a court may reduce the hours expended if "documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1210 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).

Mr. Williams' billing records demonstrate he worked at least 518.5 hours on Plaintiff's case. (Dkt. No. 112-8; Dkt. No. 114-2.) Defendants do not dispute most of Mr. Williams' requested hours. Instead, Defendants point to several "improper" entries which "bill at a high fee

rate for administrative tasks." (Dkt. No. 113 at 14 & n.2.) In response, Mr. Williams removes these entries, as well as other potentially "administrative" or "routine" entries, from the number of hours requested. (Dkt. No. 114-1 ¶¶ 3-10.) Although these removed entries total nine hours, Mr. Williams subtracted 18 total hours from his requested hours. (*Id.* ¶ 11.) Plaintiff has therefore resolved Defendants' objection as to allegedly improper administrative entries.

Defendants also contend Mr. Williams' "billing at the same high rate for routine matters like preparing the motion for fees" is "improper." (Dkt. No. 113 at 14.) However, "time spent by counsel in establishing the right to a fee award is compensable." *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part*, 984 F.2d 345 (9th Cir. 1993). Because Mr. Williams' billing records sufficiently document the time he spent on fee motions, he is entitled to attorney's fees for those hours.[2] *See Gates v. Rowland*, 39 F.3d 1439, 1448-49 (9th Cir. 1994) (affirming fee award for fee application when plaintiffs' counsel submitted documentation and defendants failed to present evidence challenging documentation). Defendants also argue fee motions do not require specialized experience and therefore seek a lower hourly rate for Mr. Williams' fee motions work, but the Court considers its adopted $540 hourly rate—discounted from Plaintiff's requested $675 hourly rate—reasonable for Mr. Williams' work on the fee motions.

Because Mr. Williams' billing records include sufficient detail to reflect compensable work on Plaintiff's case, the Court finds Mr. Williams' expenditure of 518.5 hours reasonable. Therefore, at a $540 hourly rate, Plaintiff is entitled to $279,990 in Mr. Williams' attorney fees.

**B.     Costs**

Plaintiff also requests $5,841.81 to cover Mr. Williams' incurred costs, including $1,341.81 in complaint and hotel costs and $4,500 paid to Mr. Prows for his letter on reasonable attorney and expert witness hourly rates. Defendants do not object to the complaint and hotel costs. Instead, Defendants oppose Mr. Prows' $4,500 charge—for six hours of work at a $750

---

[2] Plaintiff's reply seeks compensation for an additional 36.5 hours spent by Mr. Williams on the fee motions. (Dkt. No. 114-2.) Because Mr. Williams' billing records include sufficient detail to demonstrate compensable work, the Court allows fees for the additional 36.5 hours.

7

hourly rate—as "excessive" because his "letter does not give relevant information." (Dkt. No. 113 at 20.) However, Defendants do not provide evidence Mr. Prows spent less than six hours on his letter or argue spending six hours was unreasonable. *See Welch v. Metro. Life Ins.*, 480 F.3d 942, 950 (9th Cir. 2007) ("A reduction in hours is appropriate if the court reasonably concludes that preparation of a motion 'demanded little of counsel's time.'" (citation omitted)). Similarly, Defendants provide no evidence Mr. Prows' $750 hourly rate is unreasonable. Defendants' reliance on *Alliance for Wild Rockies v. U.S. Dep't of Agric.*, No. CV 11-76-M-CCL, 2016 WL 4766234 (D. Mont. Sept. 13, 2016), is also unavailing. There, the court considered fees "excessive" because seven experts sought duplicate fees for testimony on hourly rates. *See id.* at *9.

Because Defendants do not object to Mr. Williams' complaint and hotel costs, and Defendants' objections to Mr. Prows' $4,500 charge are conclusory, Mr. Williams' request for $5,841.81 in costs is reasonable. So, the Court grants Mr. Williams $279,990 in attorney's fees and $5,841.81 in costs.

## II. PLAINTIFF'S EXPERT WITNESS FEES AND COSTS

Plaintiff seeks $100,800 in expert witness fees to compensate for 252 hours spent "in [his] professional and expert capacity in the case." (Dkt. No. 112-12 ¶ 10.) Defendants argue Plaintiff cannot recover expert witness fees. The Court agrees.

Pro se plaintiffs generally cannot receive attorney's fees. *See Kay v. Ehrler*, 499 U.S. 432, 436-38 (1991) (denying attorney's fees for pro se attorney plaintiff under 42 U.S.C. § 1988); *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1982) ("[A] pro se litigant may not recover attorney's fees under FOIA."); *Hannon v. Sec. Nat'l Bank*, 537 F.2d 327, 328-29 (9th Cir. 1976) (denying pro se plaintiff attorney's fees under Truth in Lending Act); *Merrell v. Block*, 809 F.2d 639, 642 (9th Cir. 1987) (denying pro se plaintiff attorney's fees under Equal Access to Justice Act); *Strahan v. Holmes*, 686 F. Supp. 2d 129, 131 (D. Mass. 2010) (denying pro se plaintiff attorney's fees under ESA). The Ninth Circuit has explained attorney's fees compensate plaintiffs for their payments to an attorney, so pro se plaintiffs cannot recover attorney's fees because they have not incurred costs to obtain an attorney. *See Hannon*, 537 F.2d at 328 ("The

8

purpose behind granting attorney's fees is to make a litigant whole and to facilitate private enforcement. . . . In this case, there was no financial expenditure for an attorney's services."); *see also Merrell*, 809 F.2d at 642 (reasoning attorney's fees compensate for "sums actually expended"); *Strahan*, 686 F. Supp. 2d at 131 (refusing fees where plaintiff failed "to specify any expenses he incurred in litigating his case"). For the same reason, a plaintiff cannot collect expert witness fees for time spent litigating his own case. Even if his expertise has furthered his case, he has not incurred expenses for an expert's services. *See also Kooritzky v. Herman*, 178 F.3d 1315, 1322 (D.C. Cir. 1999) (refusing litigant expert witness fees because "it would seem a strange incentive to provide witness fees not for the purpose of reimbursing a litigant for his out-of-pocket costs, but as salary for time spent as a witness in his own litigation").

Here, Plaintiff seeks expert witness fees to compensate his "active participation throughout the life of the lawsuit, but only where [he] was acting as an expert in either fisheries biology, the 2008 BiOp, water quality, or reservoir and Flood Control Operations." (Dkt. No. 112-12 ¶ 11.) The expert consultant agreement between Plaintiff and Mr. Williams clarifies Mr. Williams is "responsible for compensating [Plaintiff]; *provided*, however, [Plaintiff] shall only be compensated for and upon the successful recovery of expert witness fees upon conclusion of the action." (Dkt. No. 112-6 at 1.) Therefore, although Plaintiff contributed his expertise to this case, he did not incur expert witness fees for his contributions. So, Plaintiff cannot obtain expert witness fees.

However, Defendants do not dispute Plaintiff can collect costs actually incurred. *See Carter*, 780 F.2d at 1481 (considering award of costs "a different question" of "funds actually expended" and allowing plaintiff to "recover all costs reasonably incurred"); *Merrell*, 809 F.3d at 642 (allowing litigant award of "actually expended" costs). Plaintiff submits receipts for costs "associated with the turbidity sampling he conducted," "the resulting analyses by a certified laboratory," and "captur[ing] images of the relative extent of turbidity." (Dkt. No. 112 at 30; Dkt. No. 112-13 at 1; Dkt. No. 112-14.) Although Plaintiff requests $5,223.73 in costs, Plaintiff only

9

submits receipts totaling $4,686.08.[3] So, the Court grants Plaintiff $4686.08 for incurred costs.

## III. MR. KLAMT'S EXPERT WITNESS FEES

Plaintiff also seeks $71,125 in expert witness fees for Robert Klamt. Relying on his expertise in "turbidity's effects on the Listed Salmonids of the Russian River," Mr. Klamt explained and applied Defendants' data to scientific literature to support Plaintiff's ESA Section 9 claim. (Dkt. No. 112 at 29.) Mr. Klamt provides billing records for 142.25 hours of work, and Mr. Prows' letter supports the requested $500 hourly rate. (Dkt. No. 112-17; Dkt. No. 112-10 at 3.) Defendants do not object, and the Court agrees Plaintiff's request for $71,125 in expert witness fees for Mr. Klamt is reasonable.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Plaintiff's motion for attorney's fees and costs. Specifically, the Court GRANTS:

- $279,990 in attorney's fees for Mr. Williams;
- $1,341.81 in complaint and hotel costs for Mr. Williams;
- $4,500 in fee expert costs for Mr. Prows, via Mr. Williams;
- $4,686.08 in costs for Plaintiff; and
- $71,125 in expert witness fees for Mr. Klamt.

The Court otherwise DENIES Plaintiff's motion. The Court therefore awards Plaintiff $361,642.89 as reasonable attorney and expert witness fees and costs.

This Order disposes of Docket No. 112 and the Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: October 8, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

---

[3] Plaintiff lists expenses totaling $5,223.73. (Dkt. No. 112-13 at 1.) However, Plaintiff does not include receipts for February 23, 2023 "Lab fees" ($375.00); March 2, 2023 "Miles to SF" ($150.65); or March 21, 2023 "Wiley Publications" ($12.00).